KAREN P. HEWITT
United States Attorney
CHRISTOPHER M. ALEXANDER
Assistant U.S. Attorney
California Bar. No. 201352
Federal Office Building
880 Front Street, Room 6293
San Diego, California  92101-8893
Telephone: (619) 557-7425 /(619) 235-2757 (Fax)
Email: Christopher.M.Alexander@usdoj.gov

Attorneys for Plaintiff
United States of America

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA | ) | Criminal Case No. 08CR1623-DMS |
|---|---|---|
| Plaintiff, | ) ) ) | HEARING DATE:    August 22, 2008<br>TIME:                    11:00 a.m. |
| v. | ) ) ) | UNITED  STATES'  RESPONSE  TO<br>DEFENDANT'S MOTIONS: |
| JOSE FLORES-SAVALA, | ) ) ) ) | (1)    COMPEL DISCOVERY/PRESERVE<br>        EVIDENCE; AND<br>(2)    FOR  LEAVE  TO  FILE FURTHER<br>        MOTIONS. |
| Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) | TOGETHER WITH STATEMENT OF FACTS,<br>MEMORANDUM  OF  POINTS  AND<br>AUTHORITIES |

1  COMES NOW the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel,

2  KAREN P. HEWITT, United States Attorney, and Christopher M. Alexander, Assistant United States

3  Attorney, and hereby files its Response and Opposition to Defendants' above-referenced motions.  This

4  Response and Opposition is based upon the files and records of the case together with the attached

5  statement of facts and memorandum of points and authorities.

6  **I**

7  **STATEMENT OF THE CASE**

8  On May 21, 2008, a federal grand jury in the Southern District of California returned an

9  Indictment charging Defendant Jose Flores-Savala ("Defendant") with being a deported alien found in

10  the United States after deportation in violation of 8 U.S.C. § 1326.  On May 22, 2008, the Court

11  arraigned Defendant on the Indictment and entered a not guilty plea.  The Court set a motion hearing

12  date for June 27, 2008.  On May 27, 2008, the Court appointed new counsel.

13  On June 3, 2008, the United States filed a motion for fingerprint exemplars and reciprocal

14  discovery.  On June 27, 2008, Defendant filed motions to compel discovery and grant leave to file

15  further motions.

16  On June 27, 2008, the Court held a motion hearing and granted a continuance.  On July 25, 2008,

17  the Court held a motion hearing and granted a continuance to August 22, 2008.  The United States now

18  responds to Defendant's motions.

19  **II**

20  **STATEMENT OF FACTS**

21  **A.    The Instant Offense**

22  On April 23, 2008, Border Patrol Agent Alfredo Martinez was patrolling the Campo, California

23  area.  Agent Martinez responded to seismic intrusion device in an area known as "Brown's Corner."

24  This area is approximately 18 miles east of the Tecate, California port of entry and less than one mile

25  north of the International Border.  This area is also frequently used by aliens to enter the United States

26  illegally.

27  Agent Martinez arrived in the general location and observed fresh footprints heading north on

28  a trail known to be used by undocumented aliens.  He followed the footprints north until he encountered

12 individuals attempting to conceal themselves in some brush. Agent Martinez immediately identified himself as a United States Border Patrol Agent and questioned each subject as to their citizenship and immigration status, including one later identified as Defendant Jose Flores-Savala. All subjects including Defendant freely admitted to being citizens and nationals of Mexico without the proper documents to enter or remain in the United States legally. At approximately 7:45 a.m., all subjects were arrested without incident and transported to the Border Patrol Station in Campo, California for further processing.

At the Station, Defendant's fingerprints were entered into a computer system. These checks confirmed Defendant's identity and immigration history.

**B.     Defendant's Statements**

Border Patrol Agent Hector D. Torres advised Defendant in the Spanish language of his communication rights with the Mexican Consulate as witnessed by Border Patrol Agent Reyes Lopez Jr. Defendant stated that he understood this right and wanted to contact the Consulate. The Consulate was contacted.

At approximately 12:51 p.m., while being video taped, Border Patrol Agent Torres advised Defendant in the Spanish language of his Miranda warnings as witnessed by Border Patrol Agent Lopez. Defendant stated that he understood his rights and invoked his right to remain silent. All questioning ceased.

**III**

**MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE**

The United States has and will continue to fully comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (19 U.S.C. § 3500), Rule 16 of the Federal Rules of Criminal Procedure, and Rule 26.2 of the Federal Rules of Criminal Procedure. On May 6, 2008, the United States provided 46 pages and one DVD as discovery including investigative reports and Defendant's statements. In response to various requests from Defendant, on June 17, 2008, the United States provided 18 additional pages. On June 22, 2008, the United States provided another DVD. On July 29, 2008, the United States provided two cassette tapes. Nevertheless, Defendant makes a series of discovery requests. The following is the United States' response to Defendant's requests.

1    1.    Statements of Defendant

2        The United States has already produced reports disclosing the substance of Defendant's oral and

3    written statements.  The United States will continue to produce discovery related to Defendant's

4    statements made in response to questions by agents.  Relevant oral statements of Defendant are included

5    in the reports already provided.  Agent rough notes, if any exist, will be preserved, but they will not be

6    produced as part of Rule 16 discovery.

7        A defendant is not entitled to rough notes because they are not "statements" within the meaning

8    of the Jencks Act unless they comprise both a substantially verbatim narrative of a witness' assertions

9    and they have been approved or adopted by the witness.  United States v. Bobadilla-Lopez, 954 F.2d

10    519 (9th Cir. 1992); United States v. Spencer, 618 F.2d 605 (9th Cir. 1980); see also United States v.

11    Alvarez, 86 F.3d 901, 906 (9th Cir. 1996); United States v. Griffin, 659 F.2d 932 (9th Cir. 1981).

12        The United States has requested any deportation tapes associated with Defendant and will

13    produce them (if they exist) when they arrive (despite them being equally available to Defendant).  The

14    United States will continue to produce discovery related to Defendant's statements made in response

15    to questions by agents.

16    2.    Arrest Reports and Notes

17        The United States has provided Defendant with arrest reports. As noted previously, agent rough

18    notes, if any exist, will be preserved, but they will not be produced as part of Rule 16 discovery.  The

19    United States is unaware of any dispatch tapes regarding Defendant's apprehension.  The United States

20    will provide any arrest reports from witnesses the United States intends to call in its case-in-chief as well

21    as any reports containing Defendant's statements the United States intends to introduce against him.

22    3.    Brady Material

23        Again, the United States is well aware of and will continue to perform its duty under Brady v.

24    Maryland, 373 U.S. 83 (1963) and United States v. Agurs, 427 U.S. 97 (1976) to disclose exculpatory

25    evidence within its possession that is material to the issue of guilt or punishment.  Defendant, however,

26    is not entitled to all evidence known or believed to exist which is, or may be, favorable to the accused,

27    or which pertains to the credibility of the United States' case.  As stated in United States v. Gardner, 611

28    F.2d 770 (9th Cir. 1980), it must be noted that:

> [T]he prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality. [Citation omitted.]

Id. at 774-775.

The United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

Although the United States will provide conviction records, if any, which could be used to impeach a witness, the United States is under no obligation to turn over the criminal records of all witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976). When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

Finally, the United States will continue to comply with its obligations pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

4.     Sentencing Information

Defendant claims that the United States must disclose any information affecting Defendant's sentencing guidelines because such information is discoverable under Brady v. Maryland, 373 U.S. 83 (1963). The United States respectfully contends that it has no such disclosure obligation.

The United States is not obligated under Brady to furnish a defendant with information which he already knows. United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986). Brady is a rule of disclosure, and therefore, there can be no violation of Brady if the evidence is already known to the defendant. In such case, the United States has not suppressed the evidence and consequently has no Brady obligation. See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

But even assuming Defendant does not already possess the information about factors which might affect his guideline range, the United States would not be required to provide information bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and prior to his sentencing date. See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains in value."). Accordingly, Defendant's demand for this information is premature.

5. <u>Defendant's Prior Record</u>

The United States has already provided Defendant with a copy of his criminal record in accordance with Federal Rule of Criminal Procedure 16(a)(1)(D).

6. <u>Proposed 404(b) Evidence</u>

Should the United States seek to introduce any similar act evidence pursuant to Federal Rules of Evidence 404(b) or 609, the United States will provide Defendant with notice of its proposed use of such evidence and information about such bad act at the time the United States' trial memorandum is filed. However, to avoid any arguments concerning lack of notice, the United States intends to introduce Defendant's prior convictions and immigration contacts as evidence of intent to enter the United States, alienage, prior deportation, and lack of application for admission. Moreover, Defendant's convictions listed in the criminal history previously produced will be introduced to impeach him should he testify.

7. <u>Evidence Seized</u>

The United States has complied, and will continue to comply, with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

The United States, however, need not produce rebuttal evidence in advance of trial. <u>United States v. Givens</u>, 767 F.2d 574, 584 (9th Cir. 1984).

8. <u>Preservation of Evidence</u>

The United States will preserve all evidence to which Defendant is entitled to pursuant to the relevant discovery rules. However, the United States objects to Defendant's blanket request to preserve all physical evidence.

The United States has complied, and will continue to comply, with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within his possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs. The United States has made

the evidence available to Defendant and Defendant's investigators and will comply with any request for inspection.

The aliens with whom Defendant was arrested have already been removed from the United States.

### 9.    Henthorn Material

The United States will review the personnel files of all <u>federal</u> law enforcement individuals who will be called as witnesses in this case for <u>Brady</u> material.  Pursuant to <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991) and <u>United States v. Cadet</u>, 727 F.2d 1452 (9th Cir. 1984), the United States agrees to "disclose information favorable to the defense that meets the appropriate standard of materiality . . ." <u>United States v. Cadet</u>, 727 F.2d at 1467, 1468.  Further, if counsel for the United States is uncertain about the materiality of the information within its possession in such personnel files, the information will be submitted to the Court for <u>in camera</u> inspection and review.

### 10.    Tangible Objects

Again, the United States is well aware of and will fully perform its duty under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>United States v. Agurs</u>, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment.  Defendant, however, is not entitled to all documents known or believed to exist, which is, or may be, favorable to the accused, or which pertains to the credibility of the United States' case.

The United States has complied, and will continue to comply, with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

The United States, however, need not produce rebuttal evidence in advance of trial. <u>United States v. Givens</u>, 767 F.2d 574, 584 (9th Cir. 1984).  Finally, there are no color copies of photographs of any "alleged narcotics" or "vehicle."

/ / /

/ / /

11.    Expert Witnesses

Defendant requests written reports and summaries of any expert testimony pursuant to Federal Rules of Criminal Procedure 16(a)(1)(G). The United States will disclose to Defendant the name, qualifications, and a written summary of testimony of any expert the United States intends to use during its case-in-chief at trial pursuant to Fed. R. Evid. 702, 703, or 705.

At trial, the United States will offer the testimony of a Fingerprint Expert to establish Defendant's identity and prior history. The United States will provide a summary, and qualifications of the expert when they are available.

Although not expected to give expert opinions based upon specialized knowledge, the United States will also offer the testimony of a records custodian to introduce documents from Defendant's A-File. See Fed. R. Evid. 701 (such testimony is "helpful to a clear understanding of the determination of a fact in issue"); United States v. VonWillie, 59 F.3d 922, 929 (9th Cir. 1995) (in a drug case, the court found that "[t]hese observations are common enough and require such a limited amount of expertise, if any, that they can, indeed, be deemed lay witness opinion"); United States v. Loyola-Dominguez, 125 F.3d 1315, 1317 (9th Cir. 1997) (agent "served as the conduit through which the government introduced documents from INS' Alien Registry File".). This testimony will consist of explaining the purpose of the A-File, what documents are contained within the A-File, and the purpose of those documents.    12-13.    Impeachment and Evidence of Criminal Investigation

As stated previously, the United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

Although the United States will provide conviction records, if any, which could be used to impeach a witness, the United States is under no obligation to turn over the criminal records of all witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976). When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

/ / /

/ / /

14.     Bias or Motive to Lie

The United States is unaware of any evidence indicating that a prospective witness is biased or prejudiced against Defendant. The United States is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony.

15.     Evidence Affecting Perception

The United States is unaware of any evidence indicating that a prospective witness has a perception, recollection, communication, or truth telling problem.

16.     Witness Addresses

The United States will provide Defendant with a list of all witnesses which it intends to call in its case-in-chief at the time the United States' trial memorandum is filed, although delivery of such a list is not required. See United States v. Dischner, 960 F.2d 870 (9th Cir. 1992); United States v. Culter, 806 F.2d 933, 936 (9th Cir. 1986); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987). Defendant, however, is not entitled to the production of addresses or phone numbers of possible witnesses of the United States. See United States v. Hicks, 103 F.3d 837, 841 (9th Cir. 1996); United States v. Thompson, 493 F.2d 305, 309 (9th Cir. 1977). Defendant has already received access to the names of potential witnesses in this case in the investigative reports previously provided to him.

17.     Witnesses Favorable to Defendant

The United States is not aware of any witness who made a favorable statement concerning Defendant.

18.     Statements Favorable to Defendant

The United States is not aware of any witness who made a favorable statement concerning Defendant.

19.     Jencks Act Material

As stated previously, the United States will comply with its obligations pursuant to Brady v. Maryland, 373 U.S. 83 (1963), United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and the Jencks Act.

/ / /

/ / /

20.    <u>Giglio Information</u>

As stated previously, the United States will comply with its obligations pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the Jencks Act, <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991), and <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

21.    <u>Agreements Between the United States and Witnesses</u>

The United States is unaware of any agreements between the United States and any witness who may testify.

22-23.  <u>Informants and Cooperating Witnesses</u>

Defendant incorrectly asserts that <u>Roviaro v. United States</u>, 353 U.S. 52 (1957), establishes a <u>per se</u> rule that the United States must disclose the identity and location of confidential informants used in a case.  Rather, the United States Supreme Court held that disclosure of an informer's identity is required only where disclosure would be relevant to the defense or is essential to a fair determination of a cause.  <u>Id.</u> at 60-61.  Moreover, in <u>United States v. Jones</u>, 612 F.2d 453 (9th Cir. 1979), the Ninth Circuit held:

> The trial court correctly ruled that the defense had no right to pretrial discovery of information regarding informants and prospective government witnesses under the Federal Rules of Criminal Procedure, the Jencks Act, 18 U.S.C. § 3500, or <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

<u>Id.</u> at 454.  As such, the United States is not obligated to make such a disclosure, if there is in fact anything to disclosure, at this point in the case.

That being said, the United States is unaware of the existence of an informant in this case. However, as previously stated, the United States will provide Defendant with a list of all witnesses which it intends to call in its case-in-chief at the time the United States' trial memorandum is filed, although delivery of such a list is not required.  <u>See</u> <u>United States v. Dischner</u>, 960 F.2d 870 (9th Cir. 1992); <u>United States v. Culter</u>, 806 F.2d 933, 936 (9th Cir. 1986); <u>United States v. Mills</u>, 810 F.2d 907, 910 (9th Cir. 1987).  Defendant, however, is not entitled to the production of addresses or phone numbers of possible witnesses of the United States.  <u>See</u> <u>United States v. Hicks</u>, 103 F.3d 837, 841 (9th Cir. 1996); <u>United States v. Thompson</u>, 493 F.2d 305, 309 (9th Cir. 1977).  Defendant has already

1   received access to the names of potential witnesses in this case in the investigative reports previously

2   provided to him.

3        24.    Skipped

4        25.    Personnel Records of Government Officers

5        The United States objects to this request.  Defendant has not shown how any personnel records

6   of the arresting officers are relevant to this case.  Defense counsel has no constitutional right to conduct

7   a search of agency files to argue relevance.  See Pennsylvania v. Ritchie, 480 U.S. 39, 59-60 (1987)

8   (citing Weatherford v. Bursey, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to

9   discovery in a criminal case, and Brady did not create one")).  Thus, the United States will review these

10  records for impeachment information, but will not provide these records as Rule 16 discovery.

11       To support his request, Defendant cites Pitchess v. Superior Court, 11 Cal.3d 531, 539 (1974).

12  In Pitchess, the California Supreme Court was addressing California Evidence Codes which permit the

13  disclosure of public entity personnel records provided that certain requirements are followed.[1]  Id.

14  However, no such code exists under the Federal Rules of Evidence.

15       26.    Training Information

16       The United States objects to this request.  Training information is irrelevant to this case.

17       27.    Performance Goals and Policy Awards

18       The United States objects to this request.  Performance goals manuals are irrelevant to this case.

19       28.    Reports of Scientific Tests or Examinations

20       The United States will comply with its obligations pursuant to Rule 16.  At trial, the United

21  States intends to offer testimony of a fingerprint expert to identify Defendant as the person who was

22

23  _____

24       [1]Under California Evidence Code § 1040, a public entity has an absolute privilege against
    disclosure of official information.  However, under section 1043 disclosure may be sought by a written
25  motion to the court after providing written notice to the public entity which has custody of the records
    sought, supported by an affidavit showing good cause for discovery including materiality to the subject
26  matter involved in the pending litigation.  Once good cause for discovery is established, section 1045
    requires the court to examine the information in camera to determine relevance to the case; as part of
27  this in camera process, the court must exclude from disclosure certain categories of information,
    including complaints more than five years old, the conclusions of any officer investigating a complaint,
    and facts are so remote as to make disclosure of little or no practical benefit. Section 1045 also
28  establishes general criteria to guide the court's determination and insure the privacy interests of the
    officers subject to the motion are protected.

08CR1623-LAB

1  previously deported.  The United States will provide the qualifications of the experts, if any.  The United

2  States will provide a summary of his report when it is available.

3       29.    <u>Brady</u>

4  See response 3.

5       30.    <u>Any Proposed 404(b)</u>

6  See response 6.

7       31.    <u>Residual Requests</u>

8  The United States objects to any such request.  The United States has and will continue to

9  comply with its discovery obligations.

10  **IV**

11  Defendant's motion for leave to file further motions should be denied except to the extent that

12  such motions are based on new discovery.

13  **V**

14  **<u>CONCLUSION</u>**

15  For the foregoing reasons, the United States asks that the Court deny Defendant's motions,

16  except where unopposed, limit further motions to those based on new law or facts.

17      DATED: August 19, 2008               Respectfully submitted,

18                                        KAREN P. HEWITT
United States Attorney

19

20                                        *s/Christopher M.  Alexander*
CHRISTOPHER M. ALEXANADER

21                                        Assistant United States Attorney
Attorneys for Plaintiff

22                                        United States of America
Email: Christopher.M.Alexander@usdoj.gov

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No.   08CR1623-DMS |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **CERTIFICATE OF SERVICE** |
| | ) | |
| JOSE FLORES-SAVALA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

IT IS HEREBY CERTIFIED THAT:

I, CHRISTOPHER ALEXANDER, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action.  I have caused service of United States' Response to Defendant's Motions to (1) compel discovery/preserve evidence, and (2) grant leave to file further motions, together with statement of facts, memorandum of points and authorities on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1.      Gregory Murphy, Esq.
        Atty for Defendant

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 19, 2008.

_s/Christopher M. Alexander_____
CHRISTOPHER M. ALEXANDER